Jon MATTHEW, Appellant,

v.

Elton SMITH, et al., Members of the Board of Zoning Adjustment, etc., James Brandt and Susan Brandt, Respondents.

No. 67396.

Supreme Court of Missouri,
En Banc.

March 25, 1986.

Jon A. Matthew, North Kansas City, for appellant.

Thomas E. Barzee, Jr., S. Preston Williams, North Kansas City, for respondents.

WELLIVER, Judge.

This is an appeal from a circuit court judgment affirming the Board of Zoning Adjustment's decision to grant Jim and Susan Brandt a variance. The Brandts purchased a residential lot containing two separate houses upon a tract of land zoned for a single-family use. The court of appeals reversed the circuit court judgment, and the case was then certified to this Court by a dissenting judge. We reverse and remand.

The Brandts own a tract of land comprising one and one-half plotted lots. When they purchased the property in March of 1980, there already were two houses on the land, one toward the front of Erie Street and one in the rear. Each of the buildings is occupied by one residential family as tenants of the Brandts. The two houses apparently have been used as separate residences for the past thirty years, with only intermittent vacancies. The property is zoned for Single Family Residences. At the suggestion of a city official, the Brandts applied for a variance which would allow them to rent both houses with a single family in each house. After some delay, including two hearings by the Board of Zoning Adjustment of Kansas City, the Board granted the application. Appellant, Jon Matthew, a neighboring landowner challenged the grant of the variance and sought a petition for certiorari from the Board's action. § 89.110, RSMo 1978. The circuit court affirmed the Board's order; on appeal, the court of appeals held that the Board was without authority to grant the requested variance. A dissenting judge certified the case to this Court.

Prompted by the persuasive opinions of both the majority of the Western District and the dissenting judge who certified the case to this Court, we believe that a review of the applicable law is warranted.

Zoning law developed during the early part of this century as a mechanism for channeling growth.[1] Zoning acts authorize

---

1. Los Angeles and Boston are formative examples of zoning, but, as Professors Mandelker and   Cunningham observe, "New York City was the first American municipality to adopt a compre-

municipalities to pass ordinances, which designate the boundaries for districts and which define the allowable land uses in such districts. Board of Zoning Adjustments (Appeals) were created to review specific applications of the zoning ordinances.

Under most zoning acts, these boards have the authority to grant variances from the strict letter of the zoning ordinance. The variance procedure "fulfil[s] a sort of 'escape hatch' or 'safety valve' function for individual landowners who would suffer special hardship from the literal application of the ... zoning ordinance." *City & Borough of Juneau v. Thibodeau*, 595 P.2d 626, 633 (Alaska 1979). *See also* A. Rathkopf, 3 The Law of Zoning and Planning § 38 (1979); N. Williams, 5 American Planning Law § 129.05 (1985); *Greenawalt v. Zoning Board of Adj. of Davenport*, 345 N.W.2d 537, 541 (Iowa 1984); *Ouimette v. City of Somersworth*, 119 N.H. 292, 402 A.2d 159, 161 (1979); *Otto v. Steinhilber*, 282 N.Y. 71, 24 N.E.2d 851, 852 (1939); *Packer v. Hornsby*, 221 Va. 117, 267 S.E.2d 140, 142 (1980). It is often said that "[t]he variance provides an administrative alternative for individual relief that can avoid the damage that can occur to a zoning ordinance as a result of as applied taking litigation." D. Mandelker, Land Use Law, at 169 (1982). The general rule is that the authority to grant a variance should be exercised sparingly and only under exceptional circumstances. *See e.g.*, A. Rathkopf, *supra*, § 37.06, at 69; *Ivancovich v. City of Tucson Bd. of Zoning Adj.*, 22 Ariz.App. 530, 529 P.2d 242, 247 (1974); *Lovely v. Zoning Bd. of Appeals of City of Presque Isle*, 259 A.2d 666 (Me.1969); *Brown v. Beuc*, 384 S.W.2d 845, 851 (Mo. App.1964); *Kensington South v. Zoning Bd. of Adj.*, 80 Pa.Cmwlth. 546, 471 A.2d 1317, 1319 (1984).

Both the majority of courts and the commentators recognize two types of variances: an area (nonuse) variance and a use variance.

The two types of variances with which cases are customarily concerned are "use" variances and "nonuse variances." The latter consist mostly of variances of bulk restrictions, of area, height, density, setback, side line restrictions, and restrictions covering miscellaneous subjects, including the right to enlarge nonconforming uses or to alter nonconforming structures.

As the name indicates, a use variance is one which permits a use other than one of those prescribed by the zoning ordinance in the particular district; it permits a use which the ordinance prohibits. A nonuse variance authorizes deviations from restrictions which relate to a permitted use, rather than limitations on the use itself, that is, restrictions on the bulk of buildings, or relating to their height, size, and extent of lot coverage, or minimum habitable area therein, or on the placement of buildings and structures on the lot with respect to required yards. Variances made necessary by the physical characteristics of the lot itself are nonuse variances of a kind commonly termed "area variances."

A. Rathkopf, *supra*, § 38.01. Many zoning acts or ordinances expressly distinguish between the two types of variances. N. Williams, *supra*, § 129.07, at 17. When the distinction is not statutory, "the courts have always distinguished use from area variances." D. Mandelker, Land Use Law, at 167. (1982). Some jurisdictions, whether by express statutory directive or by court interpretation, do not permit the

---

hensive 'zoning' ordinance of the modern type." D. Mandelker & R. Cunningham, Planning and Control of Land Development. 199 (1979). *See e.g., Welch v. Swasey,* 214 U.S. 91, 29 S.Ct. 567, 53 L.Ed. 923 (1909); *Ex parte Quong Wo,* 161 Cal. 220, 118 P. 714 (1911). The New York Resolution of 1916, and the Enabling Act of 1917, was upheld in *Lincoln Trust Co. v. Williams Bldg. Corp.,* 229 N.Y. 313, 128 N.E. 209

(1920). By the mid 1920s, zoning became more widely adopted, but the constitutionality of zoning laws remained unclear until *Village of Euclid v. Ambler Realty Co.* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). *Cf. Washington ex rel. Seattle Trust Co. v. Roberge,* 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928); *Nectow v. City of Cambridge,* 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928).

grant of a use variance. D. Mandelker, Land Use Law, at 168; N. Williams, *supra*, § 132, at 31. *E.G., Wells v. Zoning Bd. of Appeals,* 180 Conn. 193, 429 A.2d 467, 469–70 (1980).

Past decisions in this State have placed Missouri within those jurisdictions not permitting a use variance.[2] This line of cases would suggest that the Brandts are not entitled to the variance. They seek a variance to use the property in a manner not permitted under the permissible uses established by the ordinance. The ordinance clearly permits only the use of the property for a single family residence. § 8.A(1) North Kansas City Zoning Ordinance. The applicant is not seeking a variance from the area and yard restrictions which are no doubt violated because of the existence of the second residence. § 8.B–G North Kansas City Zoning Ordinance. Such an area variance is not necessary because the applicant has a permissible nonconforming structure under the ordinance. § 5.B North Kansas City Zoning Ordinance.

■ Commentators, however, have questioned the rationale underlying the Missouri cases. *See e.g.,* A. Rathkopf, *supra*, § 37.02, at 25 n. 4; N. Williams, *supra* § 132.02, at 33–4. These past cases, beginning with *State ex rel. Nigro v. Kansas City,* 325 Mo. 95, 27 S.W.2d 1030 (Mo. banc 1930), are based upon the premise that the granting of a use variance would be an unconstitutional delegation of power to the Board to amend the ordinance. *See generally* Mandelker, "Delegation of Power and Function In Zoning Administration," 1963 Wash. U.L.Q. 60, 68–71. This view has long since been repudiated by most jurisdictions, and it is contrary to the express language of § 89.090, RSMo 1978, which grants the Board the "power to vary or modify the application of any of the regulations or provisions of such ordinance relating to the *use,* construction or alteration of buildings or structures, or the *use* of land" (emphasis added). We, therefore, hold that under the proper circumstances an applicant may obtain a use variance.

Section 89.090, RSMo 1978 delegates to the Board of Adjustment the power to grant a variance when the applicant establishes "practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance ... so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done." Missouri lifted this language out of the 1920 amendment to the General City Law of New York, which provided:

> Where there are practical difficulties in the way of carrying out the strict letter of such ordinance, the board of zoning appeals shall have the power to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures, or the use of land, so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done.

The New York statute served as the first general model for other jurisdictions; soon thereafter, however, many states adopted the Standard Zoning Act that had been prepared in the early 1920's under the aegis of the United States Department of Commerce. Section 7 of the Act provides:

> To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

---

**2.** Treatise writers observe that Missouri cases establish that a use variance is not authorized. A. Rathkopf, *supra*, § 37.02 at 25; N. Williams, *supra*, § 132.02, at 33. *See e.g., State ex rel. Nigro v. Kansas City,* 325 Mo. 95, 27 S.W.2d 1030, (1930); *Rosedale-Skinker Imp. Ass'n v. Bd.*

*of Adj. of St. Louis,* 425 S.W.2d 929 (Mo.1968); *State v. Kinealy,* 402 S.W.2d 1, 5 (Mo.App.1966); *State ex rel. Sheridan v. Hudson,* 400 S.W.2d 425 (Mo.App.1966); *Brown v. Beuc,* 384 S.W.2d 845, 851 (Mo.App.1964); *Bartholomew v. Bd. of Zoning Adj.,* 307 S.W.2d 730 (Mo.App.1958).

*See* N. Williams, *supra*, § 130.01, at 21. The standards set forth in these two models, however, only became meaningful after being interpreted by the courts.[3] *See* N. Williams, *supra*, § 131.02, at 28.

Almost all jurisdictions embellished the general concepts of "unnecessary hardship" or "practical difficulties" by further defining the conditions an applicant must satisfy before obtaining a variance. Quite often, local zoning ordinances "summarize that case law by spelling out the same more specific standards in the ordinance, for the convenience of everybody." N. Williams, *supra*, § 131.02, at 28. The North Kansas City Ordinance, for example, provides in part:

### Section 27. Board of Adjustment.

A. *Purpose.* The board of adjustment may grant variances from the provisions of this ordinance in harmony with its general purpose and intent and may vary them only in specific instances hereinafter set forth. The board of adjustment, based on standards hereafter prescribed and after hearing, may decide that there are practical difficulties or particular hardship in the way of carrying out the strict letter of these regulations. The concurring vote of four members of the board shall be necessary to reverse any order, requirement or decision of the party appealed from or to issue an order or variance or to decide in favor of an appellant.

B. *Standards.*

1. The board of adjustment may vary the provisions of this ordinance as authorized in this section, but only when it shall have made findings based upon evidence presented to it in the following specific cases:

(a) That the property in question cannot yield a reasonable return if permitted to be used only under the conditions allowed by the regulations governing the district in which it is located;

(b) That the plight of the owner is due to unique circumstances; and

(c) That the variance, if granted, will not alter the essential character of the locality.

Local ordinances may further define the power of the Board of Adjustment to grant a variance,[4] but they may not conflict with the statutory criteria and how courts have interpreted those criteria. This explains why courts examine a Board's decision under the standard expressed in the statute and established through case law. *See generally* N. Williams, *supra*, §§ 131.-01, .02.

Unfortunately, any attempt to set forth a unified structure illustrating how all the courts have treated these conditions would, according to Professor Williams, prove unsuccessful. Williams observes that the law of variances is in "great confusion" and that aside from general themes any further attempt at unifying the law indicates "either (a) [one] has not read the case law, or (b) [one] has simply not understood it. Here far more than elsewhere in American planning law, muddle reigns supreme." N. Williams, *supra*, § 129.01, at 12. Yet, four general themes can be distilled from variance law and indicate what an applicant for a variance must prove:

(1) relief is necessary because of the unique character of the property rather than for personal considerations; and

(2) applying the strict letter of the ordinance would result in unnecessary hardship; and the

---

3. Initially, these statutes were challenged as constituting an overly vague delegation of legislative power. The majority of jurisdictions rejected such challenges, noting that courts would add further substance to the general language. *See generally* N. Williams, *supra*, § 132.02, at 29. *See also Puritan-Greenfield Imp. Ass'n v. Leo,* 7 Mich.App. 659, 153 N.W.2d 162, 167 n. 16 (1967).

4. Some courts, however, have held that such ordinances may not vary from the statutory language. *See* N. Williams, *supra*, § 131.02. Our statute requires that the ordinance be in harmony with the "general purpose and intent of the statute and be "in accordance with [the] general or specific rules of the statute." § 89.-080, RSMo 1978.

(3) imposition of such a hardship is not necessary for the preservation of the plan; and

(4) granting the variance will result in substantial justice to all.

*See* A. Rathkopf, *supra*, § 37.06; N. Williams, *supra*, § 129.06. Although all the requirements must be satisfied, it is generally held that " '[u]nnecessary hardship' is the principal basis on which a variance is granted." D. Mandelker, Land Use Law, at 167. *See also* A. Rathkopf, *supra*, § 38.02, at 17; N. Williams, *supra*, § 129.-06, at 15.

Before further examining the contours of unnecessary hardship, jurisdictions such as Missouri that follow the New York model rather than the Standard Act need to address the significance of the statutory dual standard of "unnecessary hardship" or "practical difficulties." Generally, this dual standard has been treated in one of two ways. On the one hand, many courts view the two terms as interchangeable. D. Hagman, Urban Planning & Land Development Control Law § 111, at 205 (1975). *See also* A. Rathkopf, *supra*, § 37.02, at 24. *E.g., McClurkan v. Bd. of Zoning Appeals,* 565 S.W.2d 495, 497 (Tenn.App. 1977); *Currey v. Kimple,* 577 S.W.2d 508 (Tex.Ct.Civ.App.1978). On the other hand, a number of jurisdictions follow the approach of New York, the jurisdiction where the language originated, and hold that "practical difficulties" is a slightly lesser standard than "unnecessary hardship" and only applies to the granting of an area variance and not a use variance.[5] D. Mandelker, Land Use Law, at 167; A. Rathkopf, *supra*, § 38.01, at § 38.05. *E.G., Puritan-Greenfield Improvement Association v. Leo,* 7 Mich.App. 659, 153 N.W.2d 162, 166 (1967); *Village Bd. of Fayetteville v. Jarrold,* 53 N.Y.2d 254, 440 N.Y.S.2d

908, 423 N.E.2d 385 (1981); *Kisil v. City of Sandusky,* 12 Ohio St.3d 30, 465 N.E.2d 848, 851 (1984). *See also Ivancovich v. City of Tucson Bd. of Adj.,* 22 Ariz.App. 530, 529 P.2d 242, 250 (1974); *Monaco v. District of Columbia, Etc.,* 409 A.2d 1067, 1072 (C.D.App.1979); *Metropolitan Bd. of Zoning v. McDonald's Corp.* 481 N.E.2d 141, 146 (Ind.App.1985) (statutorily required). The rationale for this approach is that an area variance is a relaxation of one or more incidental limitations to a permitted use and does not alter the character of the district as much as a use not permitted by the ordinance.

In light of our decision to permit the granting of a use variance, we are persuaded that the New York rule reflects the sound approach for treating the distinction between area and use variances. To obtain a use variance, an applicant must demonstrate, *inter alia*, unnecessary hardship; and, to obtain an area variance, an applicant must establish, *inter alia*, the existence of conditions *slightly* less rigorous than unnecessary hardship.[6]

While today we enter a field not yet developed by case law in our own jurisdiction, other jurisdictions provide some guidance for determining what is required to establish unnecessary hardship when granting a use variance. It is generally said that *Otto v. Steinhilber,* 282 N.Y. 71, 24 N.E.2d 851, 853 (1939) contains the classic definition of unnecessary hardship:

> Before the Board may exercise its discretion and grant a variance upon the ground of unnecessary hardship, the record must show that (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighbor-

---

**5.** In *City of Bor. of Juneau v. Thibodeau,* 595 P.2d 626 (Alaska (1979), the court observed that in those cases adopting the "practical difficulties" test for area variances the standards (practical difficulties or unnecessary hardship) were phrased in the disjunctive, but when phrased in the conjunctive both standards must be satisfied.

**6.** Because the case law in this state focuses on the granting of area variances and does not reflect the widely held approach for defining unnecessary hardship, these cases still establish the guidelines for when an area variance may be granted due to "practical difficulties," regardless of the language used therein. *E.g., Brown v. Beuc,* 384 S.W.2d 845 (Mo.App.1964).

hood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality.

Quite often the existence of unnecessary hardship depends upon whether the landowner can establish that without the variance the property cannot yield a reasonable return. "Reasonable return is not maximum return." *Curtis v. Main,* 482 A.2d 1253, 1257 (Me.1984). Rather, the landowner must demonstrate that he or she will be deprived of all beneficial use of the property under any of the permitted uses:

A zoning regulation imposes unnecessary hardship if property to which it applies cannot yield a reasonable return from *any* permitted use. Lack of a reasonable return may be shown by proof that the owner has been deprived of *all* beneficial use of his land. All beneficial use is said to have been lost where the land is not suitable for any use permitted by the zoning ordinance.

*Greenawalt v. Zoning Bd. of Adj., of Davenport,* 345 N.W.2d 537 (Iowa 1984) at 542–43 (quoting 3 Anderson, American Law of Zoning, § 18.17 (1968)). *See also* A. Rathkopf, *supra,* § 38.02, at 38–18; *Ivancovich v. City of Tucson Bd. of Adj.,* 22 Ariz.App. 530, 529 P.2d 242, 250 (1974); *Grillo v. Zoning Bd. of Appeals of West Haven,* 4 Conn.App. 205, 493 A.2d 275 (1985) (same standard, but for area variance); *Van Landschoot v. City of Mendota Heights,* 336 N.W.2d 503, 509 (Minn. 1983); *Williams v. Town of Oyster Bay,* 32 N.Y.2d 78, 295 N.E.2d 788, 790–91 (1973); *Valley View Civic Ass'n v. Zoning Bd. of Adj.,* 501 Pa. 550, 462 A.2d 637, 640 (1983); *Kensington South v. Zoning Bd. of Adj.,*

80 Pa.Cmwlth. 546, 471 A.2d 1317, 1319 (1984); *Xanthos v. Bd. of Adj. of Salt Lake City,* 685 P.2d 1032 (Utah 1984). Most courts agree that mere conclusory and lay opinion concerning the lack of any reasonable return is not sufficient; there must be actual proof, often in the form of dollars and cents evidence. *See generally* A. Rathkopf, *supra,* § 37.06, § 38.03; *Simone v. Bd. of Appeal of Haverhill,* 6 Mass.App. 601, 380 N.E.2d 718 (1978); *Puritan-Greenfield Imp. Ass'n v. Leo,* 7 Mich.App. 659, 153 N.W.2d 162 (1967); *Gaglione v. DiMuro,* 478 A.2d 573, 578 (R.I. 1984). In a well-reasoned opinion, Judge Meyer of the New York Court of Appeals stated:

Whether the existing zoning permits of a reasonable return requires proof from which can be determined the rate of return earned by like property in the community and proof in dollars and cents form of the owner's investment in the property as well as the return that the property will produce from the various uses permissible under the existing classification.

*N. Westchester Prof. Park v. Town of Bedford,* 60 N.Y.2d 492, 470 N.Y.S.2d 492, 458 N.E.2d 809, 814 (1983). Such pronouncements and requirements of the vast majority of jurisdictions illustrate that, if the law of variances is to have any viability, only in the exceptional case will a use variance be justified.

■ The record before this Court is fraught with personality conflicts and charges of bias on the part of one of the Board members.[7] Also, the record is without sufficient evidence to establish unnecessary hardship.[8] The only evidence in the

7. We need not reach appellant's charge of bias. Suffice it to say, that the Board acts as a quasi-judicial body and must assure a fair and impartial hearing. *See generally* D. Mandelker, Land Use Law, at 184–85; A. Rathkopf, *supra,* § 37.-02, at 35; § 37.07, at 90.

8. The Constitution requires that the decision of the Board be reviewed to determine if it is authorized by law and supported by competent and substantial evidence. Mo. Const. art. V, § 18. When the Brandts initially applied for a

variance and a hearing was held, there were no minutes of the proceeding and the circuit court had to send the case back to the Board before it could review the Board's order. Nothing in the record indicates why this occurred, but the statute expressly requires that such minutes be transcribed:

* * * All meetings of the board shall be open to the public. The board shall keep minutes of its proceedings, ... All testimony, objections thereto and rulings thereon, shall be

record is the conclusory opinion of Brandt that they would be deprived of a reasonable return if not allowed to rent both houses. No evidence of land values was offered; and, no dollars and cents proof was presented to demonstrate that they would be deprived of all beneficial use of their property. Appellant, in fact, was not permitted to introduce such evidence. The Board, therefore, was without authority to grant a use variance upon this record.

The record, however, indicates that the Brandts may be entitled to a nonconforming use under the ordinance. A nonconforming use differs from a variance. Nonconforming uses are those that are in existence prior to and at the time of adoption of the zoning ordinance and which have been maintained from that time to the present. *See Missouri Rock, Inc. v. Winholtz,* 614 S.W.2d 734, 739 (Mo.App.1981). *See generally* D. Mandelker, Land Use Law, at 130–135. The North Kansas City Zoning Ordinance provides:

> Any nonconforming building, structure or use which existed lawfully at the time of the adoption of this ordinance and which remains nonconforming, and only such building, structure or use which shall become nonconforming upon the adoption of this ordinance or any subsequent amendment thereto, may be continued in accordance with the regulations which follow.
> § 5.B North Kansas City Zoning Ordinance.

The ordinance further provides that one loses the right to a nonconforming use if the property is abandoned as a nonconforming use for a period of more than six months. § 5.C(4). The record indicates that a city official, based upon what was apparently scant evidence, suggested to the Brandts that they may have lost their right to a nonconforming use. There is no substantial evidence in this record indicating the length of time the property may have been unoccupied. Nothing in the record indicates whether the Brandts may have been refurbishing the property or looking for tenants during any such time. Nothing suggests that the Brandts intended to abandon their nonconforming use during the period of time the property may have been unoccupied. *See generally* D. Mandelker, Land Use Law, at 134; N. Williams, *supra,* at § 115.03 (1965). Both the trial court and counsel for the Board suggest that the Brandts "may very well have a valid nonconforming use of the premises in question." We do not believe that anything in the record indicates that the Brandts have waived their right to or abandoned their claim of a nonconforming use.

The judgment of the circuit court is reversed [9] and the cause is remanded back to

---

taken down by a reporter employed by the board for that purpose.
§ 89.080, RSMo 1978. Compliance with this requirement is necessary if there is to be any meaningful review exercised by the circuit court upon the issuance of a writ of certiorari, which may:

> If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take additional evidence or appoint a referee to take such evidence as it may direct and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceeding upon which a determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review.

§ 89.110, RSMo 1978. *Cf. Board of Zoning Adjustment v. Mayfair Homes* 634 S.W.2d 246, 248–49 (Mo.App.1982); *Volkman v. City of Kirkwood,* 624 S.W.2d 58, 59 n. 1 (Mo.App.1981).

Although the circuit court does not exercise de novo review, the statute nonetheless contemplates a meaningful review that may extend beyond the record before the Board. While not deciding the point, it might be noted that both the ordinance and a growing number of jurisdictions suggest that the Board should issue findings of fact. *See generally* D. Mandelker, Land Use Law, at 172; H. Nichols, Powers & Duties of the Zoning Bd. of Adj., *printed in* 1975 Institute on Planning, Zoning & Eminent Domain 121; N. Williams, *supra,* § 129.06, at 16; *Fields v. Kodiak City Council,* 628 P.2d 927, 932–34 (Alaska 1981); *Topanga Ass'n. Scenic Com. v. County of Los Angeles,* 11 Cal.3d 506, 113 Cal.Rptr. 836, 522 P.2d 13 (1974); *Packer v. Hornsby,* 221 Va. 117, 267 S.E.2d 140, 142 (1980). *But cf. Mullen v. City of Kansas City,* 557 S.W.2d 652, 654 (Mo.App.1974).

**9.** That part of the judgment denying appellant costs and damages is affirmed.

the circuit court with directions that the cause be remanded back to the Board of Adjustment with directions that the applicants be permitted to present evidence warranting the grant of a variance and to amend their application to claim a nonconforming use of the premises and for such hearing and decision as may be required consistent with this opinion.

HIGGINS, C.J., and BILLINGS and DONNELLY, JJ., concur.

ROBERTSON, J., concurs in result in separate opinion filed.

RENDLEN, J., concurs in result and concurs in separate concurring in result opinion of ROBERTSON, J.

BLACKMAR, J., concurs in separate opinion filed and concurs in separate concurring in result opinion of ROBERTSON, J.

ROBERTSON, Judge, concurring in result.

I concur in the result reached by the principal opinion; however, I disagree with the reasoning by which the opinion reaches that result.

The property for which the variance is sought in the present case is improved with two single-family dwellings. The house nearest the street is the original dwelling on the parcel. The other house is a renovation of, and addition to, the former garage, located on the back of the parcel. The zoning ordinance in question defines "lot" as follows:

A parcel of land occupied by, or intended for occupancy by, one principal building, unified groups [sic] of buildings for principal use, and having access to a public street. A lot may be one or more platted lots, or tracts as conveyed, or parts thereof.

North Kansas City Code, Appendix A § 3(7), p. 477.

In the applicable zone, the "permitted uses" are defined to include "dwellings, one-family." *Id.* §§ 7, 8, pp. 489–91. The zoning ordinance defines the pertinent "[l]ot area per family" as follows:

Every dwelling hereafter constructed, reconstructed, moved or altered shall provide a lot area of not less than three thousand eight hundred fifty square feet per family.

*Id.* § 8, pp. 491–92. The property on which the two houses are situated apparently contains approximately one and one-half times the number of square feet required for a single one-family residence.[1]

The back house was built several decades prior to the enactment of the zoning ordinance. However, there is some question whether occupancy of both houses as single-family dwellings would be acceptable under the ordinance as a pre-existing nonconforming use, since there may have been a lapse in occupancy terminating that status. The property owner therefore requested and obtained a variance to excuse strict compliance with the requirements of the zoning ordinance.

In its analysis prefatory to concluding that the judgment must be reversed, the principal opinion proceeds on the assumption that the variance requested here would be characterized under the "New York model" as a "use" variance, rather than a "non-use" or "area" variance. In distinguishing between the two, the discussion quoted by the principal opinion from Rathkopf's Law of Zoning and Planning is apropos, with the addition of the sentence which follows the quoted language.

---

1. The testimony and the parties refer to the property as constituting one and one-half "lots." The ordinance contains a provision that, in single-family zoning districts, dwellings are to be "located on a lot," and that "there shall be no more than one principal building on one lot except as may be approved in the planned zoning process." *Id.* § 4(C), p. 483. Since the definition of "lot" applicable under the zoning ordinance has no relation to platted lots, and pertains only to parcels occupied by "one principal building," this provision is superfluous and adds nothing to the pertinent zoning restrictions. Furthermore, since the term "lot" refers to no other particular standard, it may be presumed that the "lot" referred to is the "lot area" required for a single-family dwelling.

The two types of variances with which cases are customarily concerned are "use" variances and "nonuse variances." The latter consist mostly of variances of bulk restrictions, of area, height, density, setback, side line restrictions, and restrictions covering miscellaneous subjects, including the right to enlarge nonconforming uses or to alter nonconforming structures.

As the name indicates, a use variance is one which permits a use other than the one of those prescribed by the zoning ordinance in the particular district; it permits a use which the ordinance prohibits. A nonuse variance authorizes deviations from restrictions which relate to a permitted use, rather than limitations on the use itself, that is, restrictions on the bulk of buildings, or relating to their height, size, and extent of lot coverage, or minimum habitable area therein, or on the placement of buildings and structures on the lot with respect to required yards. Variance made necessary by the physical characteristics of the lot itself are nonuse variances of a kind commonly termed "area variances." *These may consist of a variance of the minimum required area of lot for a permitted use, (the most common "area" variance) or a variance of the required width of the lot or its frontage on a street.*

Rathkopf, 3, The Law of Zoning and Planning, § 38.01, pp. 38–1, –2 (1979) [emphasis added].

That part of the variance which alters the requirement imposed by § 3 that each lot on which principal residences are located have "access to a public street" is equivalent to a requirement that a lot have "frontage on a street." Such a variance is therefore an "area" variance. *Id.* That part of the variance which alters the requirement that principal residences in the zone occupy a minimum of 3,850 square feet is also clearly an area variance. *Hoffman v. Harris*, 17 N.Y.2d 138, 216 N.E.2d 326, 269 N.Y.S.2d 119 (1966).

The North Kansas City Zoning Ordinance defines "use" as

The purpose or activity for which the land or building thereon is designed, arranged or intended, or for which it is occupied or maintained.

North Kansas City Code, Appendix A § 3(7), p. 481. In the context of multiple-family dwellings, the New York Court of Appeals stated that

... in an area zoned for apartment houses, to seek a variance of height, floor area, and density is to seek an area variance because the essential use of a land is not being changed. In such a situation, the essential use remains the same (apartments), although the particulars (height, lot area, floor area ratio) of said use may be different.

*Wilcox v. Zoning Board of Appeals*, 17 N.Y.2d 249, 217 N.E.2d 633, 270 N.Y.S.2d 569, 572 (1966).

In *Hoffman*, two residences were situated on one parcel of land comprising just over two acres. The land was zoned for single-family residences, with a lot area requirement of two acres per residence. One of the residences had been the main house of a larger estate, and the other had been the "gatehouse." At the time the zoning ordinance came into effect, the gatehouse had been occupied by the gardener for the main house, a permitted "accessory" use in the zoning district. Subsequently, however, the gatehouse was rented to a family who were not employed in the main house. Such a use was not a pre-existing nonconforming use, and a variance was therefore requested to excuse compliance with the zoning ordinance. The Board of Zoning Appeals granted the variance and the Court of Appeals affirmed, holding that the variance sought was an "area" variance rather than a "use" variance, and that proof of "practical difficulties" alone was therefore sufficient. *Id.*, 216 N.E.2d at 330, 269 N.Y.S.2d at 124; *see also* Rathkopf, *supra* at p. 38–47 (*citing Hoffman* as a case to be "looked to for guidance" on the question of establishing "practical difficulties"). *Hoffman* is indistinguishable

from the present case, and clearly establishes that the variance involved here is an "area" variance under the New York model.[2]

Because the present case does not involve a "use" variance, it is not necessary to address, as the principal opinion does, whether Missouri has historically rejected variances of that type. This Court has never held that "use" variances are prohibited, notwithstanding proof of "unnecessary hardship," although two Court of Appeals cases have arguably so held. *State ex rel. Meyer v. Kinealy*, 402 S.W.2d 1 (Mo.App.1966); *State ex rel. Sheridan v. Hudson*, 400 S.W.2d 425 (Mo.App.1966); *contra, Beckmeyer v. Beuc*, 367 S.W.2d 9 (Mo.App.1963).

Both the *Meyer* and *Sheridan* cases attribute their holdings to this Court's opinion in *State ex rel. Nigro v. Kansas City*, 325 Mo. 95, 27 S.W.2d 1030 (Mo. banc 1930). In that case, a variance was sought to construct and use for retail business purposes a new building, to be situated on one corner of an intersection, on property zoned for residential purposes. The basis for the owner's request was that the other three corners of the intersection were zoned for businesses, that new residential development in the area would create more need for retail businesses, and that denial of the variance would deprive him of potential profits. The circuit court reversed the zoning board's denial of the variance, and this Court reversed the circuit court's judgment, holding that the evidence did not demonstrate "practical difficulties" or "un-

necessary hardship" within the meaning of both the zoning ordinance and the relevant statute, so as to authorize a variance. This Court also commented that

if in a specific case the enforcement of a regulation according to its strict letter would cause unnecessary hardship and the board can by varying or modifying the application of the regulation obviate the hardship and at the same time fully effectuate the spirit and purpose of the ordinance, they are authorized to so vary or modify the application. But the board can in no case relieve from a substantial compliance with the ordinance; their administrative discretion is limited to the narrow compass of the statute; they cannot merely pick and choose as the individuals of whom they will or will not require a strict compliance with the ordinance.

*Id.* 27 S.W.2d at 1032. This Court also stated that, rather than seeking to establish the statutory standards for a variance, the landowner was in fact asking the board of zoning appeals to "rezone" property, which the board was not empowered to do. *Id.* Nothing in the *Nigro* opinion requires the conclusion that "use" variances are categorically prohibited under the statutory standard.[3]

Notwithstanding that the variance involved here is an "area" variance rather than a "use" variance, the ordinance itself requires proof which is similar to the "unnecessary hardship" standard as it is described by the principal opinion. Under the ordinance, the board is authorized to grant a variance only if it is demonstrated "[t]hat

2. Were the variance involved here actually a "use" variance, the ordinance would appear to prohibit it under any circumstance. The ordinance conditions the authority of the board to grant a variance on proof "[t]hat the variance, if granted, will not alter the essential character of the locality." North Kansas City Code, Appendix A § 27(B)(1)(c). This language is presumably derived from *Wilcox, supra,* which described an "area" variance as one involving "no change in the essential character of the zoned district." *Id.* 217 N.E.2d at 634, 270 N.Y.S.2d at 571. However, since the variance here is not a "use" variance, this problem is not before us.

3. The remaining cases cited by the principal opinion in footnote 2 do not address the prohibition of "use" variances. Two of them concern "area" variances. *Rosedale-Skinker Improvement Assn., Inc. v. Bd. of Adj. of St. Louis,* 425 S.W.2d 929 (Mo. banc 1968); *Brown v. Beuc,* 384 S.W.2d 845 (Mo.App.1964). The third held that a board of zoning adjustment was not authorized to grant a "use" variance on the ground of financial hardship. *Bartholomew v. Bd. of Adj. of Kansas City,* 307 S.W.2d 730, 733 (Mo. App.1957).

the property in question cannot yield a reasonable return if permitted to be used only under the conditions allowed by the regulations governing the district in which it is located...." North Kansas City Ordinance, Appendix A, § 27(B)(1)(a). It is the application of this standard that requires that the judgment in the present case be reversed and remanded.

As the principal opinion notes, proof under the "reasonable return" standard cannot be made by mere lay opinion, without a showing of the facts upon which such an opinion could be based. Such evidence was not before the board in the present case, and was in fact rejected when offered. In light of this deficiency, the board's decision was unlawful, and the judgment affirming that decision must be reversed. Remand is advisable, however, to permit the landowners to submit proof under this standard if available.

I therefore concur in the principal opinion only to the extent of the result reached.

BLACKMAR, Judge, concurring.

The property owner has laid the foundation for the grant of a variance by showing that two separate houses were located on a single lot at the time the zoning ordinance was adopted. There would be a substantial waste if habitable structures were required to be torn down. This showing should permit the Board to find, in its discretion, after hearing all evidence, that the tests of "unnecessary hardship" and "practical difficulties" are met.

Rate of return is an important consideration. Although initial cost may not be a controlling circumstance in determining the base from which reasonable return is to be calculated, it is a starting point. The Board was plainly wrong in denying the plaintiff the right to inquire about the initial cost. This error taints the hearing, and the order based on it cannot stand.

I concur, therefore, in the judgment of reversal and remand to the Board.