Ewell E. LONG, Appellant,

v.

BOARD OF ADJUSTMENT OF
the CITY OF COLUMBIA,
et al., Respondents.

No. WD 47164.

Missouri Court of Appeals,
Western District.

July 6, 1993.

Smith, Lewis, Beckett, Powell & Roark, Bruce H. Beckett, Columbia, for appellant.

Susan G. Crigler, Asst. City Counselor, City of Columbia, Columbia, for respondents.

Before LOWENSTEIN, C.J., and ULRICH and HANNA, JJ.

LOWENSTEIN, Chief Judge.

This is an appeal by a landowner whose request for a use variance was denied by the City of Columbia and its Board of Adjustment (Board) created under §§ 89.080–89.090, RSMo 1986.[1] The landowner/appellant, Ewell Long, owns the property at 1702 University, which on the outside looks like a single family dwelling. However, the previous owner had divided the house into four rental units as early as 1955. In 1964, the owner constructed an addition to the house and converted it into a five-unit rental establishment. The building is located close to the University of Missouri campus, Stephens College and a hospital.

Long purchased the property in December 1971, and continued to rent out the five units. A portion of the parcel of land where the house is located was and remains to this day zoned for a single family dwelling, R–1. For some reason, the city split-zoned the 1.33 acre lot well before this lawsuit. Again, the portion of the lot where the house is located is zoned R–1. The balance of the lot, which is vacant, is zoned for medium density multiple family residences, R–3. A steep ravine or divide runs through the parcel of land and serves as the zoning line of demarcation. Both portions of the appellant's total parcel are located within their respective districts. Also, both parcels are in proximity to a district with a greater allowed density, R–4. In sum, three zoning areas are in close proximity to the appellant's house.

There is evidence the R–1 property had been used as a multiple family dwelling for approximately 36 years prior to Long's 1991 hearing before the Board. Apparently, all that time Long's use and the prior owner's use of the property violated the zoning density restrictions. In 1971, when Long purchased the property, his vendor showed him evidence of a Columbia business license for the five units and a "Certificate of Compliance with the Rental Housing Conservation Law." Long maintains both documents on a current basis and pays real estate taxes based on a commercial rate. Before buying the land, Long never verified the zoning.

In April 1991, the city of Columbia advised Long he could no longer use the property for anything other than a single family dwelling. Long then filed with the Board an application for a use variance and requested permission for a use other than the one proscribed by the zoning ordinance in the particular district. A variance permits a use the ordinance does not allow. A Board may grant a variance only to alleviate an unnecessary hardship. *Matthew v. Smith*, 707 S.W.2d 411, 414–13 (Mo. banc 1986).

At the Board's hearing, Long's expert witness, John Kirby, a state certified general appraiser with M.A.I. and S.R.A. designations, valued the property at $117,000 as a five-unit apartment dwelling. Long paid $45,000 for the property in 1971. Sold "as is," without the purchaser renovating the

---

1. Both sections have been amended and are now contained in the 1993 Cumulative Supplement. Before this action arose, § 89.090 authorized a Board to hear appeals on use variances. By amendment in 1992, the current § 89.090 deletes from Board powers the right to hear appeals on use variances.

house into a single family unit, the value would be $70,900. Kirby opined that if Long converted the property to single family unit, it would cost $30,000; however, Long could then sell the property for $116,000. Kirby stated the current use of the residence as rental units would not adversely affect the neighboring residential parcels if the existing use were allowed to continue.

In two weeks, opponents to Long's use variance request collected about 118 signatures. Many neighbors testified of efforts made by Long to disguise the existence of the property as a five-unit dwelling. They also complained of excessive noise and trash around the building. Former councilman Clyde Wilson told of a complaint made to the city in 1977 about the zoning problem. In November 1977, a city official sent a letter to Long about the zoning violation. Long tacitly admitted he received the letter from the city and his then attorney contacted city officials, but nothing ever happened. In February 1978, the city mailed a second letter and a city inspector visited the property. According to Wilson, "There's no further record that we could find of any kind of complaint at this time." Other than the dates just given, the city's documentation of events or occurrences is nil. The city maintained no record of when the property first received R–1 zoning.

The Board denied Long's request on a 3–2 vote. The Board made no findings or conclusions. The Circuit Court of Boone County affirmed.

■ The standard of review of this board decision denying the variance request is that this court will affirm the decision if it is authorized by law and supported by competent and substantial evidence upon the whole record. *Slate v. Boone County Bd. of Adjustment*, 810 S.W.2d 361, 363 (Mo.App.1991). This court views the evidence, and its reasonable inferences, in a light most favorable to the Board's findings. *Ogawa v. City of Des Peres*, 745 S.W.2d 238, 242 (Mo.App.1987).

■ The variance procedure is a safety valve for landowners who would suffer "special hardship" from literal application of zoning ordinances. *Matthew*, 707 S.W.2d at 413. As a general rule, variances should be exercised sparingly and granted only under exceptional circumstances. *Id.* The pre–1992 version of § 89.090 delegated to the board of adjustment the power to grant a variance from the permitted use of a zoning ordinance when the applicant faces "practical difficulties or unnecessary hardship" in carrying out the strict letter so that the spirit of the ordinance is secured, public safety and welfare secured, and substantial justice done. § 89.090.1(3); *Id.* at 414. An applicant for a use variance must meet four requirements. *State ex rel. Tucker v. McDonald*, 793 S.W.2d 616, 617 (Mo.App.1990). "First, the applicant must suffer unnecessary hardship in carrying out the strict letter of the ordinance. Second, the applicant must prove that relief is necessary because of the unique character of the property. Third, the variance may not destroy the preservation of the plan, and fourth, granting the variance will result in substantial justice for all." *Id.* at 617, citing *Matthew*, 707 S.W.2d at 415–16.

■ The first prong of *Matthew* is often the most important and determinative of cases like the one at bar. To obtain a use variance, an applicant bears the burden, *Holly Inv. Company v. Board of Zoning Adjustment*, 771 S.W.2d 949, 951 (Mo.App.1989), to demonstrate an "unnecessary hardship" as defined in *Matthew*, 707 S.W.2d at 416–17: 1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; 2) the owner's plight is due to unique circumstances and not to general neighborhood conditions; and 3) the grant of a variance would not alter the essential character of the locality. The landowner must bear the burden of proving an unnecessary hardship on the basis of economics—can someone like Long demonstrate that without the variance he or she cannot make a reasonable return on the property. Failing to satisfy this prong negates a review of the other factors.

The court will now examine the economic hardship on Long of having to conform to the R–1 ordinance. In particular, the basic

issue is what quantum of proof of dollars and cents evidence was produced and how much is needed to impose an unnecessary hardship.

"Quite often the existence of unnecessary hardship depends upon whether the landowner can establish that without the variance the property cannot yield a reasonable return. 'Reasonable return is not maximum return.' *Curtis v. Main*, 482 A.2d 1253, 1257 (Me.1984). Rather, the landowner must demonstrate that he or she will be deprived of all beneficial use of the property under any of the permitted uses:

A zoning regulation imposes unnecessary hardship if property to which it applies cannot yield a reasonable return from *any* permitted use. Lack of a reasonable return may be shown by proof that the owner has been deprived of *all* beneficial use of his land. All beneficial use is said to have been lost where the land is not suitable for any use permitted by the zoning ordinance."

*Matthew*, 707 S.W.2d at 417.

■ Under the *Matthew* analysis, the record here does not have sufficient evidence to establish unnecessary hardship. Long received rents from the five units for at least twenty years. Further, he can still sell the property "as is" for more money than he paid when he purchased it. By converting it to R–1 status for $30,000 he could further expand his profit. This does not come close to the demonstration of deprivation of *all* beneficial use or lack of a reasonable yield. It does not save the day for Long that his return would increase if this court restored the status quo. This result is further borne out by language in the following cases from states whose common law was cited with favor in *Matthew*.

*Vanguard v. Zoning Hearing Bd.*, 130 Pa.Cmwlth. 371, 568 A.2d 703, 704–05 (1989), involved a commercial operation that wanted a variance for a 180 foot transmission tower and building in the low density residential area designated R–1. The Board denied the request. *Id.* 568 A.2d at 705. In affirming the denial, the court

noted that "... the mere fact that a property can be put to more profitable use than that permitted under the zoning ordinance does not entitle the property owner to a variance. Before a hardship is sufficient to justify the grant of a variance, the economic hardship inflicted must nearly render the subject property valueless." *Id.* at 707; *See also Anderson v. Swanson*, 534 A.2d 1286, 1289 (Me.1987).

In *Rhode Island Hosp. Trust Nat'l Bank v. East Providence Zoning Bd. of Review*, 444 A.2d 862, 863 (R.I.1982), the bank requested a variance for an eighteen-unit apartment building on a lot zoned for one and two-family residences. The court said "the mere showing of a more profitable use that would result in a financial hardship if denied does not satisfy the requirements of our law." *Id.* at 864. The court equated loss of "all beneficial use" with that of an indirect confiscation. *Id. See also OK Properties v. Zoning Bd. of Review*, 601 A.2d 953 (R.I.1992).

■ Although this court need not address the other criteria of *Matthew*, the court will make several observations. Long has made oblique references to the respondent Columbia being estopped from taking such a hard-nosed approach after so many years of inactivity on the R–1 status of his property that the city knew he used for multiple family habitation. As a general proposition, estoppel does not apply to the acts of a government, *Bartlett & Company Grain v. Director of Revenue*, 649 S.W.2d 220, 224 (Mo.1983), including matters relating to zoning changes. *Murrell v. Wolff*, 408 S.W.2d 842, 851 (Mo.1966). The city's grant of a business license does not aid Long either. The second observation is to echo the 1986 suggestions in *Matthew* that Boards should issue finding of fact. *Matthew*, 707 S.W.2d at 417–18 n. 8. Review of only non-use variances allowed under § 89.090, RSMo Cum.Supp. 1993, would be greatly enhanced if Boards took this extra step. The final observation is the city's own record keeping regarding the zoning records on this property, as well as its torpor of enforcement. Because the city records on this parcel were fragmen-

tary, the landowner was foreclosed from attempting to utilize the remedy of a nonconforming use. In any event, Long's failure to check the zoning, and his continued rental policy after the 1977 notice are also noted.

The judgment is affirmed.