COUSIN'S ADVERTISING,
INC., Appellant,

v.

BOARD OF ZONING ADJUSTMENT
OF KANSAS CITY, Missouri,
Respondent.

No. WD 60241.

Missouri Court of Appeals,
Western District.

June 18, 2002.

James C. Bowers, Jr., Melanie E. MacGillivray, Michael K. Whitman, and Mary Jo Shaney, Kansas City, for Appellant.

Galen P. Beaufort, City Attorney, and Patricia R. Jensen, Assistant City Attorney, Kansas City, for Respondent.

Before: ELLIS, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

Cousin's Advertising, Inc., appeals from two decisions of the Board of Zoning Adjustment of Kansas City, Missouri (BZA): (1) its decision affirming a determination by the Director of Codes Administration (Codes Director) that an outdoor advertising sign proposed by the appellant (proposed sign) to be located on property leased by the appellant, which was zoned M2a for heavy industrial (M2a property) and abutted property that was zoned R1a for one-family dwelling (R1a property), violated § 80–220(e)(1)d of the Kansas City, Missouri, zoning ordinances (zoning ordinances); and (2) its decision denying the appellant's request for a variance, which the appellant had requested in the event

the BZA affirmed the decision of the Codes Director that the proposed sign violated § 80–220(e)(1)d.

The appellant raises two points on appeal. In Point I, it claims that the BZA erred in affirming the Codes Director's determination that the proposed sign violated § 80–220(e)(1)d of the zoning ordinances, which provides, in pertinent part, that "[o]utdoor advertising signs shall not be located within 150 feet of property with frontage upon the same street and which is zoned [residential] ... unless such signs, including their supporting structures, are not visible from such adjoining or adjacent property" because the BZA's decision was not supported by substantial and competent evidence. In Point II, it claims that, even if the BZA's decision in affirming the Codes Director's determination that the proposed sign violated § 80–220(e)(1)d was correct, the BZA still erred in denying the appellant's application for a variance to erect the proposed sign because the denial was not supported by substantial and competent evidence.

We affirm.

## Facts

The appellant leased the M2a property, located at 3517 Enterprise Drive, Kansas City, Missouri, from D.M. Enterprises for the purpose of constructing and maintaining an outdoor advertising sign. The property is generally located at the intersection of Interstate 70 and Interstate 435 and abuts the R1a property on the northwest. It was the appellant's intent to construct a V-shaped billboard sign, with a sign face of 14 feet by 48 feet, in the northwest portion of the property, some forty feet from where it abuts the R1a property.

On August 19, 1999, the appellant filed an application for a zoning determination

with the Codes Director, requesting a determination as to whether it could locate its sign at the proposed site without violating the 150–foot setback requirement of § 80–220(e)(1)d. In an obvious attempt to cover its bases in the event that the Codes Director ruled against it, the appellant on the very next day filed with the BZA an application for a variance for the sign. On September 8, 1999, the Codes Director determined that the proposed sign would violate § 80–220(e)(1)d. The appellant requested that the Codes Director reconsider his determination, which was denied on October 2, 2000. The appellant then timely appealed the Codes Director's determination to the BZA.

On October 24, 2000, the BZA first heard the appellant's appeal from the Codes Director's determination. After affirming the Director's determination, the BZA then turned to the appellant's application for a variance, which it denied. In affirming the Codes Director's decision and denying the appellant's application for a variance, the BZA voted 3–2 in favor of the appellant. However, pursuant to § 89.090,[1] four favorable votes were required in each instance for the appellant to prevail.

At the BZA hearing, the appellant presented evidence concerning the nature and layout of the M2a property. In that regard, the appellant's evidence was that the property had been fully developed with the exception of a narrow strip of open space between the rear of the office building located on the property and a fence bordering I–70. The evidence indicated that this strip of open space slopes from the northwest corner of the property downward toward the northeast corner of the property. The site proposed by the appellant for the sign was in that northwest corner, where, according to the appellant's

evidence, the grade would provide the best support for the sign. The appellant also maintained that any access road constructed to service the sign would have to be constructed from that same corner, and by placing the sign in its proposed location near that corner, both the length and cost of the access road would be substantially reduced.

Pursuant to § 89.110, which affords review by the circuit court of zoning and planning decisions of municipal agencies, the appellant filed a petition for a writ of *certiorari* in the Circuit Court of Jackson County requesting review of both decisions of the BZA. Upon review, the circuit court upheld both decisions.

This appeal follows.

## Standard of Review

In reviewing a zoning decision, we review the decision of the BZA, not the decision of the circuit court. *State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City*, 24 S.W.3d 681, 684 (Mo. banc 2000). The scope of review is limited to determination of whether the BZA's action is supported by competent and substantial evidence upon the whole record or whether it is arbitrary, capricious, unreasonable, unlawful or in excess of its jurisdiction. *Id.* In determining whether substantial evidence existed to support the BZA's decision, we must view the evidence and all reasonable inferences in a light most favorable to the decision. *Id.*

## I.

In Point I, the appellant claims that the BZA erred in affirming the Codes Director's determination that the proposed sign violated § 80–220(e)(1)d of the zoning ordinances, which provides, in pertinent

1. All statutory references are to RSMo 2000, unless otherwise indicated.

part, that "[o]utdoor advertising signs shall not be located within 150 feet of property with frontage upon the same street and which is zoned [residential] ... unless such signs, including their supporting structures, are not visible from such adjoining or adjacent property" because the BZA's decision was not supported by substantial and competent evidence. Specifically, the appellant claims that contrary to the BZA's determination, that the ordinance's setback requirement of 150 feet did not apply to the appellant's proposed sign because: (1) the M2a property on which the appellant seeks to locate the proposed sign does not have "frontage upon the same street" with the abutting R1a property; and (2) even if it did, the proposed sign would not be visible from the R1a property. We will address each of these two bases separately.

## A. Frontage Upon the Same Street

With respect to the frontage issue, it is undisputed that there are only two roadways, Enterprise Drive and I–70, in the general vicinity of the subject properties. Hence, as agreed by the parties, for § 80–220(e)(1)d to apply to the appellant's proposed sign, the M2a property would have to share frontage with the R1a property on either Enterprise or I–70. The appellant, in claiming that its proposed sign does not violate § 80–220(e)(1)d, contends that the M2a property does not share frontage on Enterprise and, although it does share frontage on I–70, it is not a "street" for purposes of § 80–220(e)(1)d. For its part, the BZA concedes that the M2a property does not share frontage on Enterprise, but contends that I–70 is a street for purposes of § 80–220(e)(1)d. Thus, the issue becomes what is a "street" for purposes of § 80–220(e)(1)d.

 In construing a city ordinance, we are to apply the same rules that are used in construing a state statute. *Matthews v. City of Jennings*, 978 S.W.2d 12, 15 (Mo.App.1998). Thus, as in the case of a state statute, the "cardinal rule for construing ordinances is to ascertain and give effect to the intent of the enacting legislative body, and, in so doing, to construe words of common usage in accordance with their natural and ordinary meaning." *City of Sugar Creek v. Reese*, 969 S.W.2d 888, 891 (Mo.App.1998) (citation omitted). However, if the enacting legislative body defines the terms of an ordinance, the courts must give effect to those definitions in interpreting the ordinance and ignore the commonly accepted dictionary or judicial definitions of the terms. *Nall v. Highway & Transp. Employees' & Highway Patrol Ret. Sys.*, 943 S.W.2d 708, 711 (Mo. App.1997). If the ordinance is clear and unambiguous when the terms used are given their legislative definition or their plain and ordinary meaning, then there is no room for construction and the courts must give effect to the statute as written. *Manes v. Depew*, 987 S.W.2d 527, 529 (Mo. App.1999).

Applying the foregoing rules for interpreting an ordinance, the appellant, in contending that I–70 is not a "street" for purposes of § 80–220(e)(1)d, asserts that the definition of "street" found in § 80–20 of the zoning ordinances must be applied. In that regard, § 80–20 reads:

(a) The following words, terms and phrases, when used in this chapter, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning.

. . .

*Street* means a thoroughfare available to the public, which affords the principal means of access to abutting property.

(b) Words not otherwise defined in this section shall have their common meanings. Words used in the present

tense include the future; and the singular number includes the plural and the plural the singular, unless the context clearly implies otherwise.

The appellant argues that employing this definition, I–70 would not be considered a "street" for purposes of § 80–220(e)(1)d because it does not afford the principal means of access to either the M2a or the abutting R1a property. For evidentiary support for this argument, the appellant points to the fact that the Codes Director testified at the BZA hearing that:

[I]t's virtually impossible for property to have a front yard on an interstate highway. You can't get access from an interstate highway. The state—that's why the term "limited access trafficway," their access is controlled. You can't get a driveway or drive approach off of those types of roadways.

For its part, the BZA concedes that the definition of "street" found in § 80–20(a) would necessarily exclude I–70. However, the BZA contends that the definition of street in § 80–20(a) should not be applied in interpreting § 80–220(e)(1)d, relying on the introductory language of § 80.20(a) that the terms defined therein, including street, are to have the meanings ascribed to them, "*except where the context clearly indicates a different meaning.*" (Emphasis added.) From this language of the ordinance, the BZA contends that the context of § 80.220(e)(1)d clearly indicates a meaning of street different than that found in the § 80.20(a) definition of the term. In support of this contention, the BZA points to § 80–220(e)(3)a, which provides the minimum spacing requirements between outdoor advertising signs. It reads:

No outdoor advertising sign structure hereafter erected shall be less than 200 feet from any other existing outdoor advertising sign structure on the same side of the street; provided, however, as to

limited-access trafficways and *interstate highways,* the minimum distance between outdoor advertising sign structures on the same side of the street shall not be less than 800 feet.

Section 80–220(e)(3)a (emphasis added). As the BZA asserts, § 80–220(e)(3)a equates a street not only with "limited-access trafficways," but interstate highways such as I–70. The BZA infers from this that the drafters of § 80–220(e) necessarily intended that the same definition of street be applied as to all of the provisions thereof, including § 80–220(e)(1)d. In support of its position, the BZA points to the oft-cited principle that the interpretation placed upon a zoning ordinance by the governmental body responsible for its enactment and application is entitled to great weight, *St. Louis County v. Taggert,* 866 S.W.2d 181, 182 (Mo.App.1993), and the testimony of the Codes Director at the BZA hearing that, in light of the meaning of street found in § 80–220(e)(3), he defined street in carrying out the duties of his job, for purposes of § 80–220(e)(1)d, as including interstate highways.

The respondent's position as to what constitutes a street for purposes of § 80–220(e)(1)d is also supported by the fundamental rule of construing a statute that one part of a statute should not be read in isolation from the rest of the statute. *Martinez v. State,* 24 S.W.3d 10, 18 (Mo.App.2000). Because a statute or ordinance is passed as a whole and not in parts or sections and is animated by one general purpose and intent, each part shall be construed in connection with other parts, and it is not proper to confine interpretation to the one section to be construed. *Id.* Related clauses are to be considered when construing a particular portion of a statute or ordinance. *Id.* In our minds, it is logical to read § 80–220(e)(1)d and § 80–220(e)(3) in the same way with re-

spect to the meaning of street inasmuch as they are animated by the same purpose and intent, which is to strike a just balance between the competing interests of property owners in allowing outdoor advertising signs. To interpret § 80–220(e)(1)d as excluding outdoor advertising signs on property sharing frontage with property on an interstate highway from this balancing of interests would be unreasonable, since the zoning ordinances' larger purpose of reconciling competing interests would be the same, whether the properties involved had frontage on an interstate highway or on some other type of trafficway or thoroughfare.

## B. Visibility of Proposed Sign for Abutting R1a Property

The appellant next claims in this point that even if I–70 is found to be a "street" for purposes of § 80–220(e)(1)d, the proposed sign would not violate the ordinance because at its proposed location, the sign would not be visible from the abutting R1a property in that there are "dense trees and foliage on the [R1a property] which serve as a buffer between the two properties."

On appeal, the burden of persuasion is on the party asserting error. *Mo. Health Facilities Review Comm. v. Admin. Hearing Comm'n,* 700 S.W.2d 445, 451 (Mo. banc 1985). To carry its burden, the party asserting error is required to provide specific citations to the record that support its argument. *Calarosa v. Stowell,* 32 S.W.3d 138, 145 (Mo.App.2000). Here, in support of its claim in this point with respect to the visibility of the proposed sign from the R1a property, the appellant cites us to page 106 of its brief filed with the BZA entitled "BRIEF IN SUPPORT OF APPROVAL OF SETBACK VARIANCE FOR PROPERTY LOCATED AT 3517 ENTERPRISE DRIVE IN KANSAS CITY, MISSOURI, *OR IN THE ALTERNATIVE THAT SUCH VARIANCE IS NOT REQUIRED.*" In that regard, at pages 106–107, the appellant's brief reads:

[T]he proposed Sign will not be visible from the [R1a property] due to dense trees and foliage that buffer the two properties. The [R1a property] is heavily wooded and undeveloped. The substantial number of trees on the [R1a property] prohibits any view of the Sign in its proposed location. In addition, the irregular shape of the existing building on the [appellant's property] will shield the base of the Sign from the [R1a property]. The existing building is L-shaped and the Sign will be constructed behind the Northern corner of the building, as shown on the site plan attached hereto as *Exhibit A.*

Even assuming, without deciding, that assertions made by counsel in a brief filed with the BZA are considered evidence before the board in a BZA proceeding, this lone reference in the appellant's brief before the BZA, when viewed in light of all the evidence, does not convince us that the BZA's decision in upholding the Codes Director's determination that the proposed sign violated § 80–220(e)(1)d was not supported by substantial and competent evidence.

At best, the portion of the record before the BZA cited and relied upon by the appellant as to the issue of visibility of the proposed sign from the R1a property is wholly conclusory. It is more telling by what it does not say than what it does say. It does not provide any details with respect to the trees and other foliage that would demonstrate that their presence would block the view of the appellant's proposed sign from any vantage point on the abutting R1a property. In that regard, there is nothing in the record to indicate the type of trees and foliage locat-

ed on the R1a property or their size and density, there is nothing to indicate the exact location of the trees and foliage on the R1a property, and there is nothing to indicate whether the foliage would be present year around. On the other side of the issue, however, there was evidence before the BZA that the proposed sign face was 14 feet by 48 feet and would be located only forty feet from the R1a property. Thus, when the evidence is viewed as a whole, we cannot say that it was unreasonable for the BZA to conclude that the proposed sign would be visible from the abutting R1a property so as to violate § 80–220(e)(1)d.

Even assuming that there was not a dearth of evidence in the record as to the extent of the vision barrier claimed, the appellant's argument in this regard is still lacking in that it overlooks the fact that when the owner of the abutting R1a property puts his or her land to an unrestricted use permitted by the zoning ordinances, the trees and foliage are subject to being removed. Thus, the alleged present barrier to visibility claimed by the appellant is a temporary one at best such that if the appellant were allowed to defeat the protection afforded the residential-abutting property owner by the 150–foot setback requirement of § 80–220(e)(1)d on such a basis, it would mean that the appellant, or a similarly situated nonresidential property owner, could essentially waive this protection for the residential-abutting property owner by striking first and erecting its sign before any improvements permitted by the applicable ordinances are made on the residential property. We believe that it is unreasonable to conclude that the legislative body enacting § 80–220(e)(1)d intended that the temporary barrier alleged here, given our underlying facts, would be considered sufficient as a visibili-

ty barrier to waive the protection of the section for a residential property owner.

Point denied.

## II.

In Point II, the appellant claims that, even if the BZA's decision in upholding the Codes Director's determination, that the proposed sign violated § 80–220(e)(1)d, was correct, the BZA still erred by denying the appellant's application for a variance to erect the sign as proposed because the denial was not supported by substantial and competent evidence. Specifically, the appellant claims that from the evidence, it was undisputed that the application of § 80–220(e)(1)d created a "practical difficulty upon which the BZA should have granted a variance" to locate the proposed sign some forty feet from the abutting R1a property.

In order to provide an "escape hatch" or "safety valve" to a landowner who would unduly suffer from the literal application of a zoning ordinance, § 89.090 (emphasis added) was enacted, authorizing a board of zoning adjustment:

> where there are *practical difficulties* or *unnecessary hardship* in the way of carrying out the strict letter of [an] ordinance, to vary or modify the application of any of the regulations or provisions of [the] ordinance relating to the construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done.

*Matthew v. Smith,* 707 S.W.2d 411, 414 (Mo. banc 1986). "The general rule is that the authority to grant a variance should be exercised sparingly and only under exceptional circumstances." *Id.* The "practical difficulties" standard of § 89.090 is applied in obtaining area or non-use variances,

whereas the more stringent standard of an "unnecessary hardship" is applied in obtaining use variances. *State ex rel. Klawuhn v. Bd. of Zoning Adjustment of the City of St. Joseph, Mo.*, 952 S.W.2d 725, 728–29 (Mo.App.1997) (*citing Matthew*, 707 S.W.2d at 416). The rationale for distinguishing between the standards for obtaining area variances and use variances can be found in the difference between the two types of variances. *Id.* Whereas an area variance only relaxes one or more incidental limitations to a permitted use, a use variance actually alters the use or uses permitted by the ordinance. *Id.* Here, there is no dispute that the variance sought by the appellant was an area variance in that the proposed sign on the M2a property was permitted by the zoning ordinances, provided the restrictions of § 80–220(e)(1)d were satisfied. Thus, to carry its burden of proof for obtaining the area variance requested, *Volkman v. City of Kirkwood*, 624 S.W.2d 58, 61 (Mo.App. 1981), the appellant was required to satisfy the "practical difficulties" standard of § 89.090.

Although there is no precise definition of "practical difficulties," "[a]t the very least, a non-use [area] variance applicant must show that as a practical matter the property cannot be used for a permitted use *without* coming into conflict with certain of the ordinance's restrictions." *Slate v. Boone County Bd. of Adjustment*, 810 S.W.2d 361, 364 (Mo.App. 1991) (citations omitted). The "practical difficulty" standard refers to conditions of the land in question, and not to conditions personal to the owner of the land. *Klawuhn*, 952 S.W.2d at 729. In determining whether a practical difficulty warrants an area variance in any particular case is a factual matter for the BZA's resolution, which will be reversed only for an abuse of discretion. *Hutchens v. St. Louis County*, 848 S.W.2d 616, 619 (Mo.App.1993). An

abuse of discretion will be found only if the trial court's decision is clearly against the logic of the circumstances then before it, and is so arbitrary and unreasonable that it shocks our sense of justice and indicates a lack of careful consideration. *Sloan v. Bankers Life & Cas. Co.*, 1 S.W.3d 555, 567 (Mo.App.1999). The relevant factors to be considered in determining whether a practical difficulty warrants the granting of an area variance include:

> (1) how substantial the variation is in relation to the requirement, (2) the effect, if the variance is allowed, of the increased population density thus produced on available governmental facilities (fire, water, garbage and the like), (3) whether a substantial change will be produced in the character of the neighborhood or a substantial detriment to adjoining properties created, (4) whether the difficulty can be obviated by some method, feasible for the applicant to pursue, other than a variance, and (5) whether in view of the manner in which the difficulty arose and considering all of the above factors the interests of justice will be served by allowing the variance.

*Hutchens*, 848 S.W.2d at 619.

Applying the foregoing principles of law with respect to the issuance of variances, it is necessary to a claim of practical difficulties, requiring an area variance, that there be a contention that the permitted use for the subject property cannot be effectuated in strict compliance with the use restrictions of the applicable zoning ordinance or ordinances, in our case § 80–220(e)(1)d. *Matthew*, 707 S.W.2d at 414. In that regard, the appellant contends in this point that due to several factors: (1) the lack of open space on the M2a property; (2) the topography of the M2a property; (3) the location of existing structures on the M2a property; and (4) the unique nature of the R1a property, it

would be impractical to locate its proposed sign so as to satisfy the 150–foot setback requirement of § 80–220(e)(1)d. Given these factors and "due to its proximity to Interstate 70," the appellant contends that the only practical location for its sign was the site proposed in its variance request before the BZA, which is approximately forty feet from the abutting R1a property in a "strip of open space 136 feet long and 22 feet wide between the rear of the [appellant's] building and a fence bordering the Interstate 70 right-of-way." Recognizing that it had the burden of proof at the BZA hearing to prove its entitlement to the area variance requested, the appellant contends that it met its burden by "provid[ing] the BZA with substantial and competent evidence that construction of the Sign at a location different from that shown on the sign's site plan would create a practical difficulty based upon [the factors cited], the combination of which justified the granting of the Variance Application." Of course, given our standard of review, the issue in this point is not whether the appellant submitted substantial and competent evidence of a practical difficulty in complying with the setback requirement of § 80–220(e)(1)d. The issue is whether the BZA had before it substantial and competent evidence to deny the variance, in other words, sufficient evidence to find that the proposed sign could be located on the M2a property in compliance with the restrictions of § 80–220(e)(1)d, without a practical difficulty being created that warranted the granting of the area variance requested by the appellant.

By the appellant's own admission, the proposed sign could be erected in compliance with the setback requirement of § 80–220(e)(1)d by locating it in front of the existing building on the M2a property. However, the appellant contends that this would create a practical difficulty in that the sign located accordingly would "block the view of green space and Interstate 70 from large windows located on the North façade of the building." In that regard, the hearing exhibits depicting the existing building and the surrounding area do not disclose any significant green space. In addition, we are not certain of the value, aesthetic or otherwise, of a view of Interstate 70. In any event, even accepting that the view in question has some subjective value to the owners of the M2a property, this condition does not constitute a practical difficulty upon which to base the grant of its variance application. To constitute a practical difficulty as a basis for granting a variance, the condition must be a condition of the property and not a condition personal to the owner thereof, as here. *Klawuhn*, 952 S.W.2d at 729. A mere showing that the permitted site in question for the proposed sign would diminish the view from the M2a property "of green space and Interstate 70 from large windows located on the North façade of the building" does not establish a practical difficulty for purposes of granting an area variance. Thus, the evidence in the record, that the proposed sign could be located on the M2a property in compliance with the restrictions of § 80–220(e)(1)d and that the only difficulty, from the appellant's perspective, would be that the sign would "block the view of green space and Interstate 70," would serve as substantial and competent evidence for the BZA to deny the appellant's application for an area variance with respect to the erection of the proposed sign.

Even if the evidence was not sufficient for the BZA to find that a permissible site existed on the M2a property for erecting the proposed sign without resulting in a practical difficulty, the appellant's claim in this point must still fail in that the five factors enunciated in *Hutchens* and applied here would not favor the granting of

the appellant's variance application. In considering the *Hutchens* factors, we first note that the appellant sought a variance to locate its sign within 40 feet of the abutting R1a property, which would constitute a 73% (110/150) variance as to the 150–foot setback requirement of the ordinance. We would also note that the obvious purpose or spirit of § 80–220(e)(1)d is to balance the competing interests of the property owners. In that regard, while a non-residential property owner would clearly want to maximize its business interests by being permitted to locate an outdoor advertising sign on its property, an abutting residential property owner would want to maximize his or her residential interests by limiting, as much as possible, the erection of any structure, including a large outdoor advertising sign, on the abutting property that would interfere with the enjoyment of his or her residential use of the property.[2] Obviously, in the best of all possible worlds, the non-residential property owner would like to be able to erect an outdoor advertising sign without any limitation, while the residential property owner would prefer that such signs not be allowed at all. Recognizing this fact, the city fathers struck a compromise and enacted § 80–220(e)(1)d.

With the foregoing observations serving as a backdrop, we find that factors (1), (3), (4) and (5) would favor denying the appellant's variance application. As to factor (1), it is undisputed that the variance sought by the appellant is substantial with respect to the reduction of the setback requirement of § 80–220(e)(1)d from 150 feet to forty feet; as to factor (3), from the evidence, it is at least arguable that the variance would be a substantial detriment to the uses permitted by § 80–220(e)(1)d

for the abutting R1a property; as to factor (4), there is evidence that the practical difficulty cited by the appellant with respect to the site in front of the building was not a practical difficulty at all, as we have discussed, *supra;* and as to factor (5), when all the factors are considered as a whole, we cannot say that it was unreasonable for the BZA to conclude that justice would not be served by allowing the variance requested. The bottom line is that based on substantial and competent evidence in the record, it was reasonable for the BZA to conclude that the appellant failed to carry its burden of proof in establishing an entitlement to the area variance requested. Accordingly, we find no abuse of discretion in its denial.

▬▬▬▬ In this point, the appellant also argues that the zoning classification of the abutting property as R1a is outdated and illogical, which are exceptional circumstances that constitute a practical difficulty in and of themselves. However, the appellant cites no supporting authority for such a proposition or why there is an absence for such citation. If a party fails to support a contention in its brief with relevant authority or argument beyond conclusory statements, that contention is considered abandoned. *Horwitz v. Horwitz,* 16 S.W.3d 599, 605 (Mo.App.2000). Hence, we need not address the appellant's argument with respect to the R1a zoning classification of the abutting property being "outdated and illogical."

Point denied.

### Conclusion

The decisions of the BZA: (1) affirming the determination of the Codes Director

---

2. In our case, to be consistent, we would assume that the appellant would recognize the reasonableness of the desire of the residential property owner to protect the view of the green space and Interstate 70 that the appellant apparently values so highly, given its argument in this point about the need for a variance.

that the appellant's proposed sign violated § 80–220(e)(1)d; and (2) affirming the appellant's request for an area variance to locate the proposed sign in violation of the 150–foot setback requirement of § 80–220(e)(1)d, are affirmed.

ELLIS, P.J., and HOWARD, J., concur.