**BBCB, LLC, a Missouri Limited Liability Company, Appellant,**

v.

**The CITY OF INDEPENDENCE, Missouri, Respondent.**

No. WD 64960.

Missouri Court of Appeals, Western District.

Aug. 15, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 26, 2006.

---

David S. Rauzi, Kansas City, MO, for appellant.

Steven E. Mauer and Heather S. Esau Zerger, Kansas City, MO, Allen Garner and Collin A. Dietiker, Independence, MO, for respondent.

Before EDWIN H. SMITH, C.J., and HOWARD and NEWTON, JJ.

EDWIN H. SMITH, Chief Judge.

Big Bob's County Bunker (BBCB) appeals the circuit court's judgment, pursuant to § 536.150.1,[1] upholding the decision of the Liquor License Officer (LL Officer) of the respondent, City of Independence (City), to revoke BBCB's city liquor license.

BBCB raises three points on appeal. In Point I, it claims that the trial court erred in determining that it was not entitled to a contested hearing before both the City's LL Officer and city council and conducting, in accordance with § 536.140, a non-contested case review of the City's revocation of its liquor license because, pursuant to §§ 2.06.002.A and 2.11.001.A of the City of Independence Code (Code), a contested hearing was required. In Point II, it claims that the trial court erred in upholding the decision of the LL Officer to revoke its liquor license, pursuant to § 2.06.002.B of the Code, because the ordinance is void on its face as violating due process for shifting the burden of proof from the City to the licensee to show cause why its license should not be revoked. In Point III, it claims that:

[T]he trial court erred in affirming the city's revocation because the city failed to adduce competent and substantial evidence which supported the revocation and because the revocation was made without law procedures in that the city's evidence was wholly lacking as proof of the essential elements of the case and in that the city made no record of its two revocation hearings so it left nothing to review as to the requirement of lawful procedures.

We affirm.

## Facts

BBCB owned and operated "The Bunker," a nightclub in Independence, Missouri. BBCB was the holder of a city liquor license issued by the City, which allowed it to sell alcoholic beverages by the drink and packaged liquor at The Bunker.

In 2003, the City's police department received numerous complaints from neighbors concerning excessive noise at The Bunker. In August 2003, due to the number of complaints received, the case was referred to the Community Service Division (CSD) of the City's police department for investigation. The CSD flagged The Bunker as a nuisance and assigned Officer Harold Echols to the case.

Echols proceeded to investigate the alleged noise problems at The Bunker. Echols, having identified the owner of The Bunker as BBCB, sent its representatives, Ollie Gates and David Rauzi, letters of abatement notifying them that The Bunker had been identified as a nuisance and directed it to take the necessary steps to abate the excessive noise. Despite the letters, the police continued to receive complaints from neighbors concerning excessive noise. In fact, Echols went to The Bunker to investigate numerous complaints of excessive noise, including on June 24, 2004, June 25, 2004, and July 10, 2004. On those dates, to determine the noise level at The Bunker, Echols took decibel readings near the property line, which confirmed that the noise levels exceeded 50 decibels, in violation of § 7.10.006.

1. All statutory references are to RSMo, 2000, unless otherwise indicated.

On August 6, 2004, while investigating another noise complaint, Echols went to The Bunker and observed that a band was playing inside. He asked to speak with Jacqueline Penny, the general manager of The Bunker, so he could determine whether the band was playing pursuant to a valid occupational license, as required by city ordinance. Penny told Echols that the band members were employees so they did not need an occupational license to play. Echols asked her for their employment documentation. Penny went to her office, presumably for the documentation, and when she came back, she was on her cell phone. Echols repeatedly asked her to get off the phone, which she refused to do. After the third demand, Echols cited her for interfering with a police officer. No employment documentation was ever provided, so Echols cited the band for playing without an occupational license in violation of § 5.01.026.

As a result of the ongoing complaints against The Bunker, the City's LL Officer, Terry Hartwig, was contacted about the case. After investigating, he sent a "show cause" letter to BBCB notifying it that on September 17, 2004, at 10:00 a.m., pursuant to § 2.06.002.A, a hearing would be conducted at City Hall to determine whether BBCB's liquor license should be suspended or revoked. The letter advised BBCB that its liquor license was being considered for suspension or revocation for "violations of the City Code," specifically: (1) "licensee has not at all times maintained an orderly place"; or (2) "that the conduct of the business violates, or the licensed premises or the licensee are in violation of, any provision of the City Code." In addition, the letter set forth the underlying bases for the alleged violations:

1. Action of employee Jacqueline Penny, interference with the police on or about August 6, 2004;

2. Maintaining a nuisance property on or about August 24, 2004;

3. Maintaining a nuisance property on or about July 10, 2004;

4. Maintaining a nuisance property on or about June 25, 2004;

5. Maintaining a nuisance property on or about June 24, 2004;

6. Maintaining a nuisance property on or about March 6, 2004;

7. Numerous phone calls regarding noise and/or other nuisance at the licensed premises during 2004;

8. Band performing at the licensed premises without occupational licenses.

At the revocation hearing before the LL Officer, Echols and two neighbors testified on behalf of the City, without being sworn. BBCB was given an opportunity to defend itself. No record of the hearing was made. At the conclusion of the hearing, the LL Officer revoked BBCB's liquor license, based on the alleged Code violations with respect to The Bunker.

On September 21, 2004, BBCB sought a temporary restraining order (TRO) from the Circuit Court of Jackson County to restrain the City from revoking BBCB's city liquor license until it had exhausted its appeal with the City as to the LL Officer's decision to revoke. The TRO was granted on September 22, 2004.

Pursuant to § 2.11.001.A of the Code, BBCB appealed the LL Officer's decision to revoke its liquor license to the city council. The appeal was heard on October 4, 2004. At the appeal, Echols testified that there had been numerous noise complaints made against The Bunker by neighbors. He also testified that on June 24, 2004, June 25, 2004, and July 10, 2004, he went to The Bunker and took decibel readings, which indicated noise levels that exceeded 50 decibels in violation of

§ 7.10.006. Echols also testified that on August 4, 2004, he cited Penny for interference with a police officer and the band playing at The Bunker for playing without an occupational license in violation of § 5.01.026. He further testified that neighbors of The Bunker had made at least 50 noise complaints to the police. Valerie Logan, one such neighbor, testified that the excessive noise at The Bunker had been an ongoing problem for the neighborhood. Rauzi was present and testified on behalf of The Bunker. At the conclusion of the appeal, the city council affirmed the LL Officer's revocation of BBCB's liquor license.

On October 5, 2004, BBCB appealed the City's revocation of its liquor license to the Circuit Court of Jackson County. The TRO of September 22, 2004, restraining the City from enforcing its revocation, was dissolved that same day. On October 6, 2004, BBCB filed a petition seeking an injunction enjoining the City from revoking its license during its appeal to the circuit court. After a hearing on October 8, 2004, the court granted the preliminary injunction.

BBCB's appeal was heard by the circuit court on October 15, 2004. Initially, the question arose as to the type of judicial review BBCB was entitled to receive from the trial court. The court indicated that the review would be conducted in accordance with § 536.150, a review of a noncontested case before the City. BBCB, however, contended that, pursuant to the City Code, specifically §§ 2.06.002.A and 2.11.001.A, before the City could have revoked its license, it was required to conduct a contested hearing before both the LL Officer and the city council. BBCB further contended that it did not receive the required contested hearing, rendering the City's revocation of its city liquor license void and not reviewable by the trial

court as either a contested or noncontested case. The trial court ultimately ruled that BBCB was not entitled to a contested hearing under the City Code, but was only entitled to a noncontested hearing, which it received. Accordingly, the trial court then proceeded with a noncontested case review of BBCB's license revocation in accordance with § 536.150.

Before the circuit court, the City called the LL Officer who testified that he revoked BBCB's liquor license on the basis, *inter alia*, that The Bunker was not maintained as an orderly place of business because there were numerous complaints from neighbors concerning excessive noise, and it failed to abate the nuisance despite repeated warnings from the City. The Bunker's neighbors, including Logan, Ann LeCluyse, and Julie LeCluyse, testified that they had called the police on numerous occasions to complain about the excessive noise at The Bunker. Officer Echols testified that The Bunker had generated more complaints than any other local business. On December 18, 2004, the trial court affirmed the City's revocation of BBCB's liquor license.

This appeal follows.

### I.

■ In Point I, BBCB claims that the trial court erred in determining that it was not entitled to a contested hearing before both the City's LL Officer and city council and conducting, in accordance with § 536.140, a noncontested case review of the City's revocation of its liquor license because, pursuant to §§ 2.06.002.A and 2.11.001.A of the Code, a contested hearing was required. Specifically, it claims that the trial court erred in affirming the City's revocation of its liquor license in that, although it was entitled to a contested hearing before the LL Officer and city council, on the issue of whether its license should

be revoked, it did not receive one, rendering the revocation of its liquor license "invalid" and of "no legal effect."

What BBCB is actually claiming in this point is that the trial court erred in conducting either a contested or noncontested review of its liquor license revocation in that: (1) noncontested review, in accordance with § 536.150, was not proper since it was entitled by the Code to a contested hearing before the City's LL Officer and city council, and (2) a contested review, in accordance with § 536.140, was not proper since it did not receive a contested hearing, as required. Hence, what BBCB is asking us to do in this point is to find that the trial court, as a matter of law, erred in determining that it was only entitled, by the cited sections of the Code, to a noncontested hearing before the City's LL Officer and city council before revoking its license, and, accordingly, conducting a noncontested review pursuant to § 536.140. From that, and in light of the fact that the City concedes that BBCB did not receive a contested hearing, it is further asking us to find that the City's revocation of its license was void, *ab initio*, because it failed to follow its required procedure in revoking city liquor licenses. Thus, in this point, the issue raised does not involve the merits of the revocation of BBCB's liquor license, but the procedure the City was required to follow, by virtue of its own ordinances, specifically §§ 2.06.002A and 2.11.001.A, in revoking BBCB's liquor license, which in turn, affected the required review by the trial court of that revocation.

■ "Enforcement of an ordinance by a municipality is administrative and should be reviewed under the Missouri Administrative Procedure Act [MAPA], Chapter 536[.]" *Begshaw v. City of Independence*, 41 S.W.3d 500, 503 (Mo.App.2000). Hence, the decision of the City to revoke BBCB's liquor license is subject to judicial review in accordance with MAPA. Pursuant to § 536.100:

Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a *contested case*, whether such decision is affirmative or negative in form, shall be entitled to judicial review thereof, as provided in sections 536.100 to 536.140, unless some other provision for judicial review is provided by statute[.]

(Emphasis added.) As to contested cases, § 536.140 provides, in pertinent part: "1. [t]he court shall hear the case without a jury and, except as otherwise provided in subsection 4, shall hear it upon the petition and record filed as aforesaid." As to noncontested cases, § 536.150 provides, in pertinent part:

1. When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition, or other appropriate action[.]

■ Judicial review by the trial court in a contested case, in accordance with § 536.140, requires the court to review the record to determine the agency's decision was supported by substantial and competent evidence. *Cade v. State*, 990 S.W.2d 32, 37 (Mo.App.1999). Judicial review in a noncontested case, in accordance with § 536.150, requires the court to conduct a *de novo* review in which it "hears evidence on the merits, makes a record, determines the facts and decides whether the agency's decision is unconstitutional, unlawful, un-

reasonable, arbitrary, capricious, or otherwise involves an abuse of discretion." *Cade,* 990 S.W.2d at 37. The question in this point is which one of these reviews was required by the trial court in its review of BBCB's liquor license revocation—contested, § 536.140, or noncontested, § 536.150—based upon the type of hearing that we find was mandated by the City Code in revoking the City's revocation of BBCB's license.

 Section 536.010(4) defines a contested case as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are *required by law* to be determined after hearing[.]" (Emphasis added.) Thus, the issue in determining whether a hearing is contested is not whether a hearing was actually conducted, but whether one was required by law. *State ex rel. Yarber v. McHenry,* 915 S.W.2d 325, 328 (Mo. *banc* 1995). For purposes of § 536.010(4), the "law" includes any ordinance, statute, or constitutional provision that mandates a hearing. *McCoy v. Caldwell County,* 145 S.W.3d 427, 428 (Mo. *banc* 2004). Hence, the right to a hearing must be determined by substantive law outside the MAPA. *Physician No. 3491 v. N. Kansas City,* 51 S.W.3d 101, 106 (Mo.App.2001).

BBCB claims that the revocation of its license should have been a contested case before the LL Officer and the city council, as defined in § 536.010(4), because §§ 2.06.002.A and 2.11.001.A of the City's Code "required" that it receive such a hearing. Thus, in determining whether the trial court was correct in finding that BBCB was not entitled to a contested hearing, before the LL Officer and/or city council, before the City could revoke its license, and conducting a noncontested review, pursuant to § 536.150, we must determine whether BBCB is correct in contending that the cited ordinances "require"

that before the City can revoke a city liquor license, a hearing is required before the City's LL Officer and/or the city council. Thus, this is a question of ordinance interpretation, which we review *de novo. HHC Med. Group, P.C. v. City of Creve Coeur Bd. of Adjustment,* 99 S.W.3d 68, 70–72 (Mo.App.2003).

 In interpreting a city ordinance, we are to apply the same rules that are used in interpreting a state statute. *Cousin's Adver., Inc. v. Bd. of Zoning Adjustment of K.C.,* 78 S.W.3d 774, 779 (Mo.App. 2002). Hence, as in the case of a statute, the cardinal rule for construing an ordinance is to ascertain and, if possible, give effect to the intent of the enacting legislative body. *Id.* In so doing, we are to give the language used its plain and ordinary meaning. *Id.* If the intent is clear and unambiguous from the language used, we cannot resort to any construction. *Id.* Only if the ordinance is found to be ambiguous, giving the language used its plain and ordinary meaning, are we permitted to resort to ordinance construction. *Id.*

 Section 2.06.002.A of the Code, states, in pertinent part, that: "The Liquor License Officer *may* upon recommendation of the Chief of Police or upon his/her own motion, conduct a hearing to determine if any license issued under authority of this Chapter should be suspended or revoked." (Emphasis added.) Use of the word "may" in an ordinance implies alternative possibilities and that the conferee of that power has discretion in the exercise of the power. *In re Estate of Parker,* 25 S.W.3d 611, 616 (Mo.App.2000). Thus, in using the term "may" in § 2.06.002.A, it is clear that the City intended that, in determining whether to revoke a city liquor license, the LL Officer was permitted but was not required to conduct a hearing. As such, in accordance with § 536.010(4), defining a contested case, for purposes of

MAPA, the hearing provided for in § 2.06.002 is not a contested case, subject to judicial review in accordance with §§ 536.100–536.140, in that it is not a "required" hearing under the Code, as BBCB claims in this point.

BBCB also claims that § 2.11.001 required that it be given a contested hearing before the city council. It reads, in pertinent part:

A. Any license applicant, licensee or permittee aggrieved by the decision of the Liquor License Officer to suspend or revoke a liquor license or to deny, suspend or revoke an employee's permit shall have the right to appeal such action to the City Council by filing a written appeal with the City Clerk within five (5) days after notice of the decision is served on the permittee. No licensee or permittee shall have the right to appeal the decision of the Liquor License Officer unless said licensee or permittee has requested a hearing as provided in Section 2.06.002.C or Section 2.07.011.E of this Chapter.

§ 2.11.001. Giving this language its plain and ordinary meaning, it is clear that the City only intended for this ordinance to provide for an appeal of the LL Officer's decision to revoke a city liquor license, with or without a hearing. It does not *require* an alternative or additional hearing for the revocation of a city liquor license. In fact, it does not even mandate an appeal, unless the licensee has first requested a hearing before the LL Officer, as provided in § 2.06.002.C. And, of course, because the hearing under § 2.06.002.A is totally discretionary with the LL Officer, even if an appeal were mandated because a hearing was requested, the mandated appeal would not necessarily involve a review of a contested hearing conducted by the LL Officer.

In summary of this point, because neither ordinance cited by BBCB "requires" a hearing before the City can revoke a city liquor license, BBCB was not entitled to a contested hearing before either the LL Officer or city council, subject to judicial review by the circuit court in accordance with §§ 536.100–536.140. Hence, the circuit court did not err in finding that BBCB was not entitled to a contested hearing before the City could revoke its city liquor license and, accordingly, did not err in conducting a noncontested review, in accordance with § 536.150, of the revocation, as claimed by BBCB in this point.

Point denied.

**II.**

In Point II, BBCB claims that the trial court erred in upholding the City's revocation of its liquor license, pursuant to § 2.06.002.B of the Code, because the ordinance is void on its face, as violating due process, for shifting the burden of proof from the City to the licensee to "show cause" why its license should not be revoked. Whether the ordinance violates the appellant's constitutional rights is a question of law, which we review *de novo*. *State v. Bremenkamp*, 190 S.W.3d 487, 491 (Mo.App.2006).

If, pursuant to § 2.06.002.A, the LL Officer elects to conduct a hearing to revoke a licensee's liquor license, § 2.06.002.B provides, in pertinent part:

The licensee shall be given not less than ten day's written notice prior to the hearing. The notice shall set out the reasons for which the hearing is called and shall command the person holding the license to be present at such hearing and *show cause*, if any, why such license should not be suspended or revoked.

(Emphasis added.) BBCB claims in this point that the "show cause" language of the ordinance effectively places the burden of proof on the licensee to show why its license should not be suspended or revoked, rather than requiring the City to prove why it should be suspended or revoked. BBCB further claims that this placing of the burden of proof on the licensee violates due process, rendering the ordinance void as being unconstitutional, citing *Mo. Veterans Home v. Bohrer*, 849 S.W.2d 77 (Mo.App.1993), and *Gamble v. Hoffman*, 695 S.W.2d 503 (Mo.App.1985), the former involving the dismissal of a nursing home administrator, in accordance with Chapter 36, dealing with State personnel laws, and the latter involving the dismissal of a Trooper by the Missouri Highway Patrol, pursuant to Chapter 43, dealing with the Missouri Highway Patrol.

Even assuming, *arguendo*, that due process attaches in a noncontested case, such as ours, to the extent claimed by BBCB in this point, neither case cited by it addresses the issue that it raises, whether identical or language similar to the "show cause" language of § 2.06.002.B impermissibly actually shifts the burden of proof from the agency to the licensee to justify the agency's contemplated action, violating due process and rendering it unconstitutional and void. Both cases cited simply held that the burden of proof was, by law, on the agencies in question and could not be shifted. BBCB's claim in this point assumes that the show cause language of the ordinance shifts the burden of proof from the City to the licensee, but does not cite any authority for the proposition that such language has been interpreted as involving burden-shifting nor makes any argument as to that point.

The challenged language of § 2.06.002.B clearly does not shift the burden from the City to the licensee as, BBCB contends, for purposes of revoking a city liquor license. Generally, the purpose of a show cause order is to provide notice to the person or corporation, against whom an action may be taken, to appear and defend. *Love v. Love*, 75 S.W.3d 747, 759 (Mo.App. 2002). Hence, instead of shifting the burden of proof to the licensee to prove why it should not have its license suspended or revoked, the show-cause language of § 2.06.002.B simply requires that the LL Officer give the licensee notice of the hearing to allow it the opportunity to defend itself.

Point denied.

### III.

In Point III, the appellant claims that:

> [T]he trial court erred in affirming the city's revocation because the city failed to adduce competent and substantial evidence which supported the revocation and because the revocation was made without law procedures in that the city's evidence was wholly lacking as proof of the essential elements of the case and in that the city made no record of its two revocation hearings so it left nothing to review as to the requirement of lawful procedures.

Before attempting to address the merits of the appellant's claim of error, we must first address the obvious deficiencies of the appellant's Point Relied On (PRO). *See Finnical v. Finnical*, 81 S.W.3d 554, 557–58 (Mo.App.2002) (stating that an appellate court must first address briefing deficiencies to determine, *sua sponte*, its own jurisdiction). The appellant's PRO in this point fails to comply with Rule 84.04(d),[2] governing proper PROs.

Rule 84.04(d)(1) provides:

**2.** All rule references are to Missouri Rules of Civil Procedure 2005, unless otherwise indicated.

(1) Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

Thus, Rule 84.04(d)(1) requires that a proper PRO must: (1) identify the ruling or action of the trial court that is being challenged on appeal; (2) state the legal reason or reasons for the claim of reversible error; and (3) explain in summary fashion why, in the context of the case, the legal reason or reasons support the claim of reversible error. *Johnson v. Mo. Dep't of Health & Senior Servs.*, 174 S.W.3d 568, 587 (Mo.App.2005). Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that the appellate court does not become an advocate for the appellant by speculating on facts and on arguments that have not been made. *Id.* at 587. The failure to comply with Rule 84.04(d) warrants dismissal of the appeal. *Id.*

BBCB's PRO in Point III fails to explain in summary fashion why, in the context of this case, the legal reason or reasons alleged support its claim of reversible error. Its PRO is nothing more than an abstract statement of the law, which is unacceptable in satisfying the requirements of Rule 84.04(d). *Id.* at 587–88. In essence, all it claims is that the trial court was wrong. BBCB's failure to comply with Rule 84.04(d) is sufficient reason to dismiss its claim of error in Point III. Id. at 588. It is not proper for the appellate court to speculate as to the point being raised by the appellant and the supporting legal justification and circumstances. *Sullivan v. Sullivan*, 159 S.W.3d 529, 537 (Mo.App. 2005). To do so, would cast the court in the role of an advocate for the appellant, which we cannot be. *Id.* Nonetheless, in keeping with our policy that we would prefer to rule on the merits, if possible, rather than dismiss for briefing deficiencies, *id.*, and in an attempt to understand BBCB's claim in this point, we will view it in light of its argument thereon.

■ After reading BBCB's PRO in this point in conjunction with its argument, we are able to ascertain the appellant's claim. In essence, it is claiming that the trial court erred in affirming the City's revocation of its liquor license because the record is insufficient to support the grounds on which the City revoked BBCB's license. In that regard, it claims that there was insufficient evidence to support a finding, pursuant to § 2.06.001, setting forth the grounds for revoking a liquor license, that The Bunker had not at all times maintained an orderly place of business in violation of the City Code. We disagree.

■ In reviewing a noncontested case, this court reviews the trial court's judgment, not the agency's decision and, thus, the standard of review is the same as in any other court-tried case. *State v. Mo. State Highway Patrol*, 168 S.W.3d 122, 126 (Mo.App.2005); *Cade*, 990 S.W.2d at 37. Thus, the scope of our review is governed

by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The trial court's judgment will be affirmed, unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares or erroneously applies the law. *Id.* at 32. Hence, we review the trial court's decision, as to whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion, to determine whether it is supported by substantial evidence, is not against the weight of the evidence, or erroneously declares or applies the law. *Mo. State Highway Patrol*, 168 S.W.3d at 126–27; *Cade*, 990 S.W.2d at 37. The evidence and all reasonable inferences drawn therefrom will be viewed in the light most favorable to the trial court's judgment and all contrary evidence and inferences are disregarded. *Pride v. Lewis*, 179 S.W.3d 375, 378 (Mo. App.2005). The trial court is the trier of fact and, as such, determines the credibility of witnesses and is free to believe or disbelieve all or part of witness testimony. *Id.*

Section 2.06.001 sets forth the permissible grounds for suspension or revocation of a liquor license. It reads:

The following actions shall be considered as grounds for suspension or revocation of a license:

1. A licensee has not at all times maintained an orderly place; or

2. A licensee or any employee, agent or servant of the licensee has violated any of the provisions of this Chapter; or

3. The license held by the licensee was obtained through materially false statements in the application for such license or renewal thereof; or

4. The licensee failed to make a complete disclosure of all pertinent information in the application for such license or renewal thereof; or

5. The licensee, since the issuance of such license, has ceased to be the person actually engaged in the active control and management of the particular establishment for which the license was issued; or

6. Anything has occurred which would render the licenses or the licensed premises ineligible or unsuitable for a license under the provisions of this Chapter; or

7. That such licensee is in violation of any Federal or State Liquor Control Act; or

8. That the conduct of the business violates, or the licensed premises or the licensee are in violation of, any provision of the City Code; or

9. That an employee of any licensee has failed to properly obtain an employee's permit; or had said permit suspended or revoked after notification of said suspension or revocation by the Liquor License Officer to the holder; or

10. The licensed premises has been discontinued or abandoned.

§ 2.06.001. Proof of any one or more of these grounds would be sufficient to revoke a licensee's liquor license.

In his letter of revocation, the LL Officer advised BBCB that its liquor license was being revoked on grounds 1 and 8 of § 2.06.001, stating that the license was:

[I]mmediately revoked for violations of the Alcoholic Beverages Chapter of the City Code, specifically: 1. Failure to at all times maintain an orderly place (Section 2.06.001.1); and 2. The conduct of the business violates, or the licensed premises or the licensee are in violation of any provision of the City Code (Section 2.06.001.8)[.]

As to grounds found, he further advised that they were based on his findings that the underlying factual allegations were true:

1. Action of employee Jacqueline Penny, interference with the police on or about August 6, 2004;

2. Maintaining a nuisance property on or about August 6, 2004; July 10, 2004; June 25, 2004; and June 24, 2004, by actions including but not limited to, failing to abate all criminal and nuisance activity when given written notice on August 29, 2003, by exceeding the noise level after 10:00 p.m. set forth by City ordinance;

3. Maintaining a nuisance property on or about March 6, 2004, by actions including but not limited to, actions of employee Jacqueline Penny, disturbing the peace on or about March 6, 2004;

4. Numerous police calls regarding noise and/or other nuisance at the licensed premises during 2004 (approximately 50 calls so far);

5. Bands performing at the licensed premises without occupational licenses.

BBCB claims that the record does not support these factual findings of the LL Officer, including those concerning the noise complaints, such that its findings as to the grounds for revocation are not supported by the record. Our review of the record, viewed in a light most favorable to the judgment of the trial court, supports the allegation that there where "[n]umerous police calls regarding noise and/or other nuisance at the licensed premises during 2004," which, in turn, is sufficient to support the first ground found by the LL Officer for revoking BBCB's liquor license, that The Bunker failed to maintain an orderly place of business at all times, in accordance with § 2.06.001.1.

The City contended at trial, *inter alia*, that evidence of numerous complaints from neighbors concerning excessive noise at The Bunker and the failure of BBCB to abate this nuisance, despite numerous letters of abatement from the City, constituted a "[f]ailure to at all times maintain an orderly place," in violation of § 2.06.001.1. In support of its contention, the City called the LL Officer, who testified that he revoked the BBCB's liquor license, *inter alia*, on the basis that the police had received numerous noise complaints regarding The Bunker. The LL Officer testified that, in his opinion, a business is not an orderly place of business if there are numerous complaints from neighbors concerning excessive noise and the business fails to abate the nuisance despite repeated warnings from the City. To corroborate his testimony, concerning the numerous noise complaints, the City called Logan, a nearby neighbor, who testified that, due to the noise at The Bunker, she had called the police at least fifteen times. Similarly, Ann LeCluyse, another neighbor, testified that she had called the police, at least, thirty times. Her daughter, Julie LeCluyse, also testified that, in the last two years, she had called the police, at least, thirty times. Finally, Officer Echols, testified that The Bunker had generated more phone complaints than any other local business establishment. The trial court was free to believe the testimony of these witnesses. *Pride,* 179 S.W.3d at 378. If believed, this testimony was sufficient to establish that due to the overwhelming number of noise complaints, The Bunker was in violation of § 206.001.1, failure to maintain, at all times, an orderly place of business. As such, the trial court did not err in affirming the City's revocation of BBCB's city liquor license.

Point denied.

## Conclusion

The circuit court's judgment upholding the City's revocation of BBCB's liquor license is affirmed.

HOWARD and NEWTON, JJ., concur.